**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| AIR TROPIQUES, SPRL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-1438 |
| | § | |
| NORTHERN & WESTERN INS. | § | |
| CO. LTD., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

This is a first-party insurance coverage dispute.  The plaintiff, Air Tropiques, Sprl,

operated an air-charter service in the Democratic Republic of Congo ("DRC").  Northern

& Western Insurance Company, Ltd (NWIC) insured an Air Tropiques airplane.  NWIC's

underwriter, Supra Management Solutions, Inc., f/k/a NWIC Management Corp.,[1] had

valued the airplane at $1.1 million, which was the Agreed Value stated in the policy

NWIC issued.  After the airplane crashed, NWIC proposed a settlement of either half the

Agreed Value specified in the policy or a replacement airplane of equivalent value.  The

proposed settlement failed, and NWIC denied the claim on the basis that Air Tropiques

misrepresented the airplane's value during the underwriting process.  Air Tropiques sued

NWIC, NWIC Management, and Robert and Devon Harrison as NWIC's principals,

alleging that the claim was wrongfully denied.

---

[1] The court refers to Supra Management Solutions by the name it used during most of the relevant period,
NWIC Management.

This Memorandum and Opinion addresses the motions to dismiss for failure to state a claim filed by Robert Harrison, Devon Harrison, and NWIC Management. (Docket Entry Nos. 7, 8).   Based on the pleadings; the motion, response, reply, supplemental response, and surreply; and the relevant law, the court grants the Rule 12(b)(6) motions to dismiss, without prejudice and with leave to amend.  Air Tropiques has until **April 25, 2014,** to file an amended complaint.

## I.      Background

The court accepts the complaint's sufficiently pleaded factual allegations as true for the purpose of ruling on the motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The complaint alleges that Robert and Devon Harrison are Texas residents who formed NWIC under the laws of the Federation of St. Kitts & Nevis ("St. Kitts"), where it was headquartered.   The Harrisons also formed NWIC Management, which was incorporated under the laws of Texas and has its principal place of business in Texas. NWIC Management underwrites insurance policies and administers the claims process on NWIC's behalf.   NWIC has an "administrative office" at the same Texas location as NWIC Management's office.

Air Tropiques, a company formed under the laws of the DRC, owns and operates a small fleet of airplanes for an air-charter service.  NWIC insured a 1972 Beechcraft King Air A-100 (the "airplane") for Air Tropiques.   NWIC Management underwrote the policy.  The underwriting resulted in a $1.1 million Agreed Value of the airplane, which was stated in the NWIC policy.

On December 4, 2011, the airplane crashed while attempting a landing at the Point Noire Airport in the Republic of Congo.  NWIC Management acknowledged the claim, retained an adjustor, and confirmed that the airplane was a total loss.  NWIC, through NWIC Management, offered to pay approximately half the Agreed Value or to locate and deliver a "comparable" airplane.  Air Tropiques accepted the offer for a comparable replacement.  After considerable delay, to "facilitate resolution of the claim, Air Tropiques's broker traveled to Houston to meet with Devon Harrison, but other [necessary] claims personnel (particularly Robert Harrison, who was personally adjusting the claim and was the ultimate decision maker) were purportedly not available at the time." (*Id.* ¶ 16).  "Notwithstanding the Agreed Value of the air[plane], the agreement to source and to deliver a comparable replacement aircraft to the DRC, . . . , NWIC Ltd. (through NWIC Management Corp.) ultimately denied the claim based upon the defense of 'total and blatant misrepresentation' of the valuation of the air[plane] . . . . and . . . has not offered to return any premiums or to return the aircraft or parts therefrom which were salvaged and/or sold to third parties." (*Id.* ¶¶ 16–17).

Air Tropiques initially sought to arbitrate the claim under an arbitration clause included in the standard terms and conditions attached to the policy.  The same terms and conditions included a choice-of-law provision calling for the application of English law. After NWIC "refused to submit to arbitration," Air Tropiques brought suit in this court.

The complaint alleges that "[i]f the standard terms and conditions [of the policy] apply, then UK substantive law should govern this case.  However, in the unlikely event that UK substantive law should not govern this case, then the Court will need to

determine what other substantive law shall govern this case." (*Id.* ¶ 21). "Due to this 'choice of law' dispute, Air Tropiques asserts claims which may or may not apply depending on the Court's 'choice of law' determination." (*Id.*).

The parties now agree that English law should apply to the dispute, but the complaint does not identify what causes of action under English law are asserted. The complaint asserts, against all defendants, the following causes of action:

1. breach of the compromise and settlement agreement;

2. breach of the insurance policy;

3. violations of the Texas Prompt Payment Statute;

4. violations of the Texas Insurance Code;

5. breach of the duties of good faith and fair dealing regarding the policy;

6. common-law fraud and misrepresentation as to insurance coverage;

7. common-law fraud and misrepresentation as to the sale of the airplane; and

8. conversion for the sale of the airplane;

The complaint seeks a declaratory judgment, contract reformation, and attorneys' fees. The complaint also alleges an estoppel theory of relief.

As to NWIC Management and the Harrisons, the complaint alleges that at "all relevant times, NWIC Management Corp., Robert Harrison, and/or Devon Harrison were acting as agents of NWIC Ltd. for whose acts or omissions NWIC Ltd. is vicariously liable. Robert Harrison and/or Devon Harrison also were acting as agents of NWIC Management Corp. for whose acts or omissions NWIC Management Corp. is vicariously liable. NWIC Ltd. and/or NWIC Management Corp. are also vicariously liable for the

4

acts or omissions of any other agents acting on behalf of NWIC Ltd., NWIC Management Corp., Robert Harrison and/or Devon Harrison." (*Id.* ¶ 37).  The complaint also alleges that "NWIC Ltd. and/or NWIC Management Corp. are also the alter egos of Robert Harrison and/or Devon Harrison.  As a result, Air Tropiques seeks to impose liability on Robert Harrison and /or Devon Harrison as a result of any acts or omissions of NWIC Ltd. and/or NWIC Management Corp." (*Id.* ¶ 14).  These allegations are legal conclusions and are not accepted as true for the purpose of the motion to dismiss.

NWIC Management and the Harrisons moved to dismiss for failure to state a claim.  The three defendants argue that this insurance-contract dispute is between NWIC and Air Tropiques, the policy signatories, and that Air Tropiques has failed to allege facts that would make them liable as NWIC's alter egos or agents of NWIC.

As noted, though vigorously disputed at the beginning of this lawsuit, all parties now agree that English law applies to the insurance contract.  Accordingly, the alleged violations of the Texas Deceptive Trade Practices Act and violations of the Texas Insurance Code no longer appear to be part of this suit, and they are dismissed.

## II.    The Legal Standard for a Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *see Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). To withstand a Rule 12(b)(6) motion, a complaint must "contain enough facts to state a claim to relief that is

plausible on its face." *Twombly,* 550 U.S. at 570. The Supreme Court has explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 677. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)."  *Id.*

"Further, with respect to the fraud and fraudulent inducement claims, Fed. R. Civ. P. 9(b) requires that Appellant "state with particularity the circumstances constituting the fraud." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (citing Fed. R. Civ. P. 9(b)).  "'Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out.'" *Id.* (quoting *Benchmark Electronics, Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003).

## III.    Analysis

### A.    The Harrisons' Motion to Dismiss

The complaint allegations makes clear that the actions Robert Harrison and Devon Harrison took in the events causing this lawsuit were as the owners and officers of NWIC Management or NWIC.  It appears that Devon Harrison was the president of NWIC and that Robert Harrison was the senior vice-president of NWIC Management.  Beyond that, the complaint does not specify what roles the Harrisons played in the companies.  The only claims that are specifically directed to the Harrisons by name are the common-law fraud allegations.  These allege that the Harrisons "misrepresented the coverage afforded under the Policy and/or the standard terms and conditions relating to coverage of the

6

policy" and that they "misrepresented that they would be paying the claim for the loss of the aircraft as an inducement for Air Tropiques to allow the Defendants to take possession of and sell the aircraft and its parts to third parties." (Compl. ¶¶ 32–33).

The court must analyze fraud allegations under Rule 9(b), which requires pleading the "who, what, when, where, and how." Air Tropiques does not identify the elements of a fraud claim under English law. Under Texas law, to state a claim "based upon an affirmative false representation, [Air Tropiques] must allege that the [Harrisons] made 'a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008) (quoting *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 929–30 (Tex. 1996)).

The first common-law fraud claim generally asserts that "Robert Harrison and/or Devon Harrison and/or their agents intentionally misrepresented the coverage afforded under the Policy and /or the standard terms and conditions relating to coverage under the policy." (Compl. ¶ 32). As an initial matter, this allegation does not specify the who, what, and where of any fraudulent statement. In the background section, the complaint globally refers to all the challenged actions as taken by "NWIC Ltd. (through NWIC Management Corp.)." The complaint does not specify what the Harrisons knew when the purported misrepresentations about policy coverage were made. To the contrary, the complaint alleges that "NWIC Ltd. (through NWIC Management Corp.) ultimately denied the claim based upon the defense of 'total and blatant misrepresentation' of the

valuation of the aircraft."  (*Id.* ¶ 17).  The complaint does not specify how or why this defense was itself a fraudulent misrepresentation.  The fraud claims against the Harrisons relating to the misrepresentations as to the policy coverage are dismissed as insufficiently pleaded.

The other fraud allegation is that "NWIC Ltd., NWIC Management Corp., Robert Harrison and/or Devon Harrison and/or their agents intentionally misrepresented that they would be paying the claim for the loss of the aircraft as an inducement for Air Tropiques to allow the Defendants to take possession of and sell the aircraft and its parts to a third party."  (*Id.* ¶ 32).  This common-law fraud claim again does not allege who, what, when, when, where, and how.  The background section of the complaint, in the only relevant section, states that "NWIC Ltd. (through NWIC Management Corp.) made arrangements to sell the aircraft to a third party in the Republic of Congo; and, at the direction of NWIC Ltd. (through NWIC Management Corp.), the aircraft was sold to the third party." (Compl. ¶ 16).  This background does not contain the specificity required to support a fraud claim against the Harrisons.

The complaint globally asserts a conversion claim against the "Defendants" for "wrongfully exercis[ing] control and dominion over the aircraft when it took possession of and sold the aircraft and its parts to a third party."  (Compl. ¶ 34).  The factual allegation pleaded to support that claim was that "NWIC Ltd. (through NWIC Management Corp.) made arrangements to sell the aircraft to a third party in the Republic of Congo; and, at the direction of NWIC Ltd. (through NWIC Management Corp.), the

aircraft was sold to a third party." (Compl. ¶ 16). There are no factual allegations supporting a conversion claim against the Harrisons.

The complaint also contains allegations that the Harrisons were the agents of NWIC and NWIC Management, so as to make NWIC Ltd. and NWIC Management vicariously liable for the Harrisons' alleged wrongful conduct. (Compl. ¶ 32). But that requires sufficient allegations of a basis to hold the Harrisons liable. The parties have provided no guidance as to the English law that they argue applies. The court looks again to Texas law. "'The rule in Texas has always been that an agent is personally liable for his own torts.'" *East Texas Mack Sales v. Northwest Acceptance Corp.,* 819 F.2d 116, 119 (5th Cir. 1987) (quoting *Light v. Wilson,* 663 S.W.2d 813, 815 (Tex. 1983) (Spears, J., concurring)). "'[W]here an agent commits a tort while acting within the scope of his employment as the agent of another, he will be personally liable in damages, even though his principal is also liable under the doctrine of *respondeat superior.*'" *Id.* (quoting *Leonard Duckworth, Inc. v. Michael L. Field & Co.,* 516 F.2d 952, 958 (5th Cir. 1975)). As noted, the complaint does not sufficiently allege that the Harrison's committed fraud.

An agent is not individually liable for claims sounding in contract. *Id.* It is well established that "[a]n agent is not ordinarily liable under the contract he executes on behalf of his principal, so long as his agency is disclosed, but he is personally liable if his acts breach an independent duty." *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 705 (S.D. Tex. 2011) (citing *Westmoreland v. Sadoux,* 299 F.3d 462, 466–67 (5th Cir. 2002); RESTATEMENT (THIRD) AGENCY § 6.01 ("When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed

principal, (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and the third party agree otherwise."); *Roe v. Ladymon,* 318 S.W.3d 502, 521 (Tex.App. Dallas 2010) ("[A]n agent for a disclosed principal is not liable on the principal's contract . . . ."); *Rugaart v. Rodriguez,* 2003 WL 22671571, at *2 (Tex. App.-Corpus Christi 2003) ("As a general rule, an agent is not liable for the contracts of the principal.")). In Texas, a "corporate officer or director may not be held liable for the corporation's breach of contract unless he or she acts in bad faith or is guilty of a conflict of interest**."** *Lopez v. State Farm Mut. Auto. Ins. Co.,* 2008 WL 2744609, at *6 (Tex.App.-Corpus Christi, 2008).

The complaint fails to allege specific facts that, if proved, would show that the Harrisons personally committed a tort against Air Tropiques or that they could be liable for breaching the NWIC insurance contract or settlement agreement.

Finally, the complaint alleges that the Harrisons are liable under an alter-ego theory. "NWIC Ltd. and/or NWIC Management Corp. are also the alter egos of Robert Harrison and / or Devon Harrison. As a result, Air Tropiques seeks to impose liability on Robert and/or Devon Harrison as a result of any acts or commissions of NWIC Ltd. and/or NWIC Management Corp." These alter-ego allegations are clearly deficient. The Texas Supreme Court has listed six situations in which Texas courts may pierce the corporate veil:

(1) When the [corporate] fiction is used as a means of perpetrating a fraud;
(2) Where a corporation is organized and operated as a mere tool or business conduit of another corporation;
(3) Where the corporate fiction is resorted to as a means of evading an existing legal obligation;

(4) Where the corporate fiction is employed to achieve or perpetrate
    monopoly;
(5) Where the corporate fiction is used to circumvent a statute; and
(6) Where the corporate fiction is relied upon as a protection of crime to
    justify a wrong.

*Western Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994)

(citing *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986)).  The Fifth Circuit

has identified "three broad categories in which a court may pierce a corporate veil: (1)

The corporation is the alter ego of its owners and/or shareholders; (2) the corporation is

used for illegal purposes; and (3) the corporation is used as a sham to perpetrate a fraud."

*Id.* (citations omitted).  Alter ego, "one of several methods for piercing the corporate

veil," may be "shown from the total dealings of the corporation and the individual,

including the degree to which corporate formalities have been followed and corporate and

individual property have been kept separately, the amount of financial interest, ownership

and control the individual maintains over the corporation, and whether the corporation

has been used for personal purposes." *Id.* (citations omitted).  Air Tropiques's complaint

alleges no factual basis to find that the Harrisons were abusing the NWIC or NWIC

Management corporate forms in ways that would show alter ego or permit a piercing of

the corporate veil.

    To summarize: the fraud claims against the Harrisons are dismissed under Federal

Rule of Civil Procedure 9(b), the allegations that the Harrisons are personally liable for

breach of contract are dismissed because they fail to plead a basis to hold them liable as

agents for a disclosed principal, and there are insufficient factual allegations to plead a

basis to find that the Harrisons are liable under an alter ego or other veil piercing theory.

Accordingly, the court grants the Harrisons' motion to dismiss, without prejudice and with leave to amend.  (Docket Entry No. 8).

### C.    NWIC Management

The complaint also fails to state a claim against NWIC Management.   The complaint fails to allege fraud with the specificity that Rule 9(b) requires.  The complaint alleges only legal conclusions as to agency and alter ego, without alleging the factual basis necessary to determine the extent of NWIC Management's liability as an agent of, or as an alter ego to, NWIC.

Air Tropiques alleges the following as to NWIC Management:

13.    At all relevant times, NWIC Management Corp. acted as the managing general agent for NWIC Ltd., [and was] involved in the underwriting of the Policy and/or the handling and/or denial of the subject claim.

16.    After the aircraft crash, Air Tropiques timely notified NWIC Ltd. (through NWIC Management Corp.) about the aircraft crash.  NWIC Ltd. (through NWIC Management Corp.) acknowledged the claim, and NWIC Ltd. (through NWIC Management Corp.) retained an adjuster surveyor to investigate and adjust the claim.  During the course of the adjustment, it was confirmed that the aircraft was a total loss.  Also, NWIC Ltd. (through NWIC Management Corp.) made arrangements to sell the aircraft to a third party in the Republic of Congo; and at the direction of NWIC Ltd. (through NWIC Management Corp.), the aircraft was sold to the third party. Thereafter, NWIC Ltd. (through NWIC Management Corp.) offered to pay approximately half the Agreed Value (which approximated the replacement cost of the aircraft).   In the alternative, NWIC Ltd. (through NWIC Management Corp.) made repeated offers to source and deliver a comparable replacement aircraft to the DRC, and Air Tropiques accepted the offer to source and deliver a comparable replacement aircraft. . . .

(Compl. ¶¶ 13, 16).

12

The complaint repeatedly uses the "(through NWIC Management Corp.)" parenthetical. The complaint then asserts the following claims:

> 26. **Breach of Contract (Compromise and Settlement Agreement).**
> By its denial of the claim, (NWIC Management Corp.) committed a breach and / or anticipatory breach of the compromise and settlement agreement under which NWIC Ltd. (through NWIC Management Corp.) agreed to source and deliver a comparable replacement aircraft to the DRC for which Air Tropiques seeks to recover its damages for such breach . . . .

> 27. **Breach of Contract (The Policy).** By its denial of the claim, NWIC Ltd. (through NWIC Management Corp.) committed a breach and or anticipatory breach of its insurance contract (the Policy) for which Air Tropiques seeks to recover its damages for such breach . . . .

The common-law breach of the duty of good faith and fair dealing is pleaded only against NWIC Ltd. It does not mention NWIC Management at all. The conversion claim refers globally to "Defendants," and the factual allegation supporting that claim uses the "NWIC Ltd. (through NWIC Management Corp.)" parenthetical.

The complaint allegations fail to allege facts necessary to state an agency theory of liability. The allegations are general. They state legal conclusions, not factual allegations about the extent of NWIC Management's specific role in the challenged actions. The complaint allegations fail to allege breach of contract or related claims against NWIC Management.

Finally, the complaint alleges that NWIC Management is the alter ego of NWIC. The complaint, however, fails to allege sufficient facts that provide any basis to treat the two companies as one. Accordingly, the claims against NWIC Management are dismissed, without prejudice and with leave to amend.

To summarize: the fraud claims are dismissed under Federal Rule of Civil Procedure 9(b), the claims based on an agency theory are dismissed for failing to allege facts supporting an inference that NWIC Management is liable for the breach of contract or related claims, or conversion, and the claims based on alter ego are dismissed for failing to allege facts necessary to treat NWIC and NWIC Management as a single entity.

## IV.   Conclusion

The Harrisons' and NWIC Management's motion to dismiss under Rule 12(b)(6) are granted.   The dismissals are without prejudice and with leave to amend.   Air Tropiques has until **April 25, 2014** to file an amended complaint.   In amending its complaint, Air Tropiques should make clear the effect of the parties' agreement that English law applies and what claims are asserted under that law.

SIGNED on March 31, 2014 at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge